Kirby Aguillard, the plaintiff in this suit, was seriously injured in a collision between a bread truck which he was driving and a dray truck loaded with gravel and being driven by an inmate of the Louisiana State Penitentiary, on the morning of April 18, 1939, at a point near Tunica, in the Parish of West Feliciana, on State Highway No. 124, also known as the Angola Highway. By comparison in weight, the bread truck, as the truck plaintiff was driving will be hereafter referred to, was much lighter than the other truck which belonged to the State of Louisiana and which we will hereafter refer to as the penitentiary truck.
The topography of the surrounding country where the accident occurred indicates it is hilly and the road, which is hard-surfaced, is a winding one with some very sharp curves. Although not directly so, we will assume that the road runs east and west. The two vehicles were traveling in opposite directions, the bread truck toward the east and the penitentiary truck toward the west.
For the personal injuries which he sustained and which he claims are permanent, as well as for the pain and suffering which he endured, plaintiff is asking to recover from the State the sum of $15,000. He claims to have already incurred medical, hospital, and nursing expenses to the amount of $530.02 and that he will require medical attention in the future which will cost approximately $1,000. We note, however, that he prays for judgment against the State, which is the sole defendant, in the sum of $16,000 only.
The State is sued on the theory that it owned the truck which collided with the plaintiff's truck and which had been purchased by it for the use of the State Penitentiary, one of its agencies, and that at the time of the collision it was being driven by John Glisson, a trustee, on a mission and errand for the penitentiary. The required legislative authority to sue the State had been obtained, as appears from Act No. 357 of the Legislature of Louisiana for the year 1940.
The plaintiff alleges that just prior to, and at the moment of the accident, he was driving his truck at a reasonable rate of speed on his extreme right-hand side of the road; that he had just reached the top and was going down the grade of a small hill. He avers that the penitentiary truck was proceeding toward him on its driver's left-hand or wrong side of the road, a fact which he had no means of knowing, because of the hill which he was climbing and which obscured his vision until he had reached the crest. He alleges further that he then applied his brakes and did his best to avoid the collision, but the trucks were then too near each other and they ran head-on into each other on his right-hand side of the road. He then charges the *Page 647 
driver of the penitentiary truck with negligence in the following respects: (1) In operating his truck on his left half of the highway which was his wrong side; (2) In failing to give the bread truck one-half of the main traveled portion of the highway at least 200 ft. before meeting it; (3) In failing to hold his truck under control and as reasonably near the right-hand side of the road as he should, especially while going over a hilly highway and (4) In not keeping a proper look-out ahead. All of these acts of negligence, he avers, were committed by the driver of the penitentiary truck while in the course and scope of his employment and in the performance of his duties for the Louisiana State Penitentiary, and they constituted the sole and only cause or causes of the accident and of his resulting injuries and damages, for which the defendant herein, the State of Louisiana, is responsible. He then states the nature and extent of his injuries which will later be referred to in detail.
There was first filed on behalf of the State an exception to the effect that the act by which the plaintiff claims he is authorized to prosecute his suit is a local law requiring notice thereof to be published, under Section 6 of Article 4 of the Constitution of Louisiana and as there is no allegation made in the petition that such notice had been given, the constitutional provision must have been violated and hence the State has not consented to be sued. The exception was then overruled and answer was then filed.
In its answer the State denies the acts of negligence charged against the driver of the penitentiary truck and avers that it was the truck plaintiff was driving which came over the hill on its wrong side of the road and at an excessive rate of speed. In a supplemental answer the defendant pleads, in the alternative, that in the event it should be shown that the driver of its truck was negligent in any manner as charged, that the plaintiff was guilty of contributory negligence as he had full view of the road for a distance of 1,000 ft. and that when he reached the crest of the hill the penitentiary truck was still 750 ft. away from him and he therefore had ample distance and time in which to stop his truck on the right shoulder of the highway or drive it along a shallow depression to the right of that shoulder. As a further alternative the defendant pleads that the plaintiff had the last clear chance to avoid the accident.
In the lower court, after trial of the case, there was judgment in favor of the plaintiff against the State in the sum of $12,554.02. The State has appealed and the plaintiff has answered the appeal praying for an increase in the amount of the award to the sum originally demanded by him.
The contention made in support of the exception filed on behalf of the defendant is answered adversely in the decision of the Supreme Court in the case of Lewis v. State of Louisiana,196 La. 814, 200 So. 265, 266, which like the present, was a tort action. In that case the court stated that "the waiver of immunity or exemption from suit of the sovereign State and the authorization by the Legislature of a person to sue the State is not a law within the meaning and contemplation of Article 4, Section 6 of the Constitution, and, therefore, publication of notice of the proposed introduction of the bill was unnecessary." On that authority alone, the exception in this case was correctly overruled.
Plaintiff was alone in the bread truck, and Glisson alone in the penitentiary truck. Plaintiff claims that he remembers absolutely nothing about the accident, that his mind is a perfect blank concerning what happened at the moment and also all that followed in connection therewith. Glisson, who lived in Mississippi at the time the case was tried, was not available as a witness. The record is therefore barren of the testimony of any eyewitnesses to the accident. A young negro girl named Anna Bell who was working in a field abutting the highway, saw the two trucks approaching each other from a distance and heard the crash, but says that she did not see the actual collision.
To decide the very important question relating to the point on the highway where the impact took place, we have therefore to rely almost exclusively on the physical facts consisting principally of the skid marks left by the wheels of the trucks. As near as these can determine the question, it occurred on the up-grade of the hill about 250 ft. from the crest, and over the center line of the hard-surfaced portion of the highway with regard to the direction in which the penitentiary truck was driving. *Page 648 
Several witnesses testified having seen skid marks left by the tires of the penitentiary truck beginning at a point 150 ft. from the place of the impact. These marks were definitely placed by these witnesses south of the center of the road on the driver's left or wrong side of the highway until they reached the point where supposedly the impact took place, at which time, apparently in an effort to avoid the collision, the driver pulled over to his right as at that point the marks crossed over the center of the road. These marks were identified by Mr. T.S. Landry, who at the time was general manager of the State Penitentiary, and who says that he arrived at the scene of the accident not very long after it had happened. Although any skid marks which may have been left by the wheels of the bread truck were not seen by some of the witnesses because they were covered by the gravel which was scattered on the road, there is nevertheless some testimony to the effect that after the road had been cleared of gravel there were some marks visible and traced as far back as 40 ft. in the direction from which that truck was coming, near the center of the road and turning toward the driver's left. This, and the fact that both trucks came to rest on the north side of the road, which was the penitentiary truck's right hand side, caused a bit of confusion, but we believe it is explained by other physical facts shown, such as the point of impact on the two trucks and the manner in which they were carried around by the force of the blow, all indicating that when the two drivers realized the impending collision, plaintiff turned to his left and the other driver to his right in a final effort to avoid striking each other, but it was then too late.
The evidence convinces us that the penitentiary truck was too far over to its left-hand side of the road while ascending a hill and that the driver was consequently at fault. The important issue seems to be involved in the plea of contributory negligence which is urged against the plaintiff.
There is no testimony concerning the speed of the two trucks except that of the negro girl, Anna Bell, who says that both were going fast, and on that alone, we cannot conclude that plaintiff was driving at an excessive rate of speed. This witness also states that she heard no horn blown. Although failure to sound a horn was not pleaded as one of the charges of contributory negligence against the plaintiff, even if it be conceded that he did not sound it, it seems to us that it could not have served much purpose for him to have done so before reaching the crest of the hill, and after he was at the top, his truck was then in full view of the driver of the other truck who either saw it or, under the law, is held to have seen it in time to take precaution and drive over to his right hand side of the road in order to avoid a collision.
The point which is dwelt on more than any other to support the plea of contributory negligence is that the plaintiff, according to the testimony of a civil engineer, based on some measurements of distances between, and the elevations of the hills, and also on the assumption that the place of impact on the highway was definitely fixed, could have seen the penitentiary truck as far away as 1,000 ft. and therefore could have taken either of two precautions to avoid the collision; he either could have stopped his truck on the shoulder along his right hand side of the road or he could have continued driving in a shallow depression further to his right, along the shoulder.
With respect to the first of these alternatives, certainly the plaintiff should not have been called on to stop his truck when he was still on the side of the hill opposite from that on which the other truck was approaching, because all that he was required then to do, was to keep his truck on his right hand side of the road where he was driving it. After he had reached the top of the hill from that side and started going down the other, it would have been a bit dangerous for him to attempt such a stop on a down grade and we do not think that the law contemplates that a driver, faced with such a situation, should take that risk. With regard to the other alternative suggested, it would be an unreasonable rule, in our opinion, which would require a driver to leave the road entirely and drive on a surface which, for all that he knows, might not be safe, in order to avoid an emergency created by another driver who is approaching him from the opposite direction on the highway. The reasonable and natural thing for him to do, and what the law and the rules of the *Page 649 
road contemplate, is that he should keep to his right path in the road and rely on the assumption which he has a right to make that the other driver will get back to his side of the road before running into him. Kennedy v. Opdenweyer, 11 La.App. 532, 121 So. 636; Travis v. Lavigne, La.App., 161 So. 912. The defendant has failed to show any contributory negligence on the part of the plaintiff and he should not therefore be barred from recovery on that plea. Nor, in our opinion, do the facts as found, justify the application of the rule of last clear chance.
On the question of liability therefore, we find ourselves in accord with the judgment of the lower court but have to differ in respect to the amount therein awarded.
Plaintiff was rendered unconscious by the blow he received in the accident and remained in that condition for a period of ten days. He was taken to the General Hospital in Baton Rouge almost immediately and his condition was found to be one of deep shock, with many lacerations about the face and arms, and general contusions and abrasions about the body. He was in no condition to be X-rayed at that time and so spinal punctures were made which revealed a bloody fluid indicating some brain injury. After he had partly regained conciousness, X-rays were taken and he was found to have sustained a fracture of the skull.
He remained in the hospital about eighteen days during which time he was irrational. He was then removed to his father's home at New Roads, Louisiana, where, although he showed some slight improvement, he remained more or less irrational and at times became very violent. Six months after the accident, however, he had improved to such an extent that Dr. Webb McGhee who had treated him at the hospital was of the opinion that he had recovered except for the headaches that he complained of. He also complained of suffering with his eyes. According to the medical testimony this complaint as well as the headaches might be attributed to his brain injury.
Plaintiff states that the accident has caused him a complete loss of memory, but all that he does not seem to remember is what happened at the time of the accident and for sometime following as otherwise he recalled things that took place before and afterwards in general. He has not been able to do much work since the accident although at the time of the trial of his case he had started farming on a small scale. He has married since recovering from his injuries and doubtless realized the responsibilities of such a state of life which leads us to believe that probably his condition is not as serious as he had first thought it might develop.
Plaintiff no doubt endured severe suffering both mental and physical. He sustained many severe cuts and abrasions, but fortunately these have all cleared up and he has been left with no visible or permanent scars.
The district judge awarded him $12,000 which we have concluded is excessive. In the recent case of Matlock v. State of Louisiana, La.App., 4 So.2d 90, the plaintiff was awarded an amount slightly over that awarded in this case but the injuries in that case were far more aggravated than those suffered by the present plaintiff, and it was found very doubtful if there ever would be a complete recovery. We are of the opinion that an award of $6,000 in this case would be more in line with the jurisprudence and have decided to amend the judgment by reducing the amount accordingly.
We note that the district judge allowed $554.02 for medical and other expenses whereas plaintiff prayed for $530.02 only. The judgment will have to be amended in that respect also. Counsel for plaintiff also calls our attention to an error in the judgment which allows interest from February 16, 1940, whereas interest should begin to run only from September 16, 1940. We think it would be better in amending the judgment that we recast it. For the reasons stated it is therefore ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff, Kirby Aguillard, and against the defendant, the State of Louisiana, in the full sum of $6,530.02, with interest thereon at the rate of 5% per annum from September 16, 1940, until paid, together with all the costs incurred in the district court and on this appeal.
DORE and OTT, JJ., concur. *Page 650